IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                       Civil Action No. 2:15-cv-07698

$2,200,000, MORE OR LESS, IN
UNITED STATES CURRENCY.

      Defendant.

(Bank of Mingo)

## VERIFIED COMPLAINT OF FORFEITURE

The United States of America brings this civil *in rem* action, pursuant to 31 U.S.C. § 5317(c)(2), for the forfeiture of certain personal property, specifically $2,200,000 in United States currency (defendant currency) from Bank of Mingo.

### PARTIES

1. The plaintiff is the United States of America (United States).

2. The defendant currency constitutes property traceable to property involved in violations of 31 U.S.C. § 5324 or a conspiracy to commit such violations. The defendant currency was formerly in the custody of Bank of Mingo but is now in the custody of the Federal Bureau of Investigation.

### JURISDICTION AND VENUE

3. This action is properly in the United States District Court for the Southern District of West Virginia pursuant to 28 U.S.C. §§ 1345 and 1355. Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1395, and 18 U.S.C. § 981(h).

## STATEMENT OF FACTS

### Background

At all times relevant to this complaint:

4. Bank of Mingo was a financial institution, as defined by 31 U.S.C. § 5312, with offices in and around Mingo County, West Virginia. Bank of Mingo was engaged in banking activities affecting interstate commerce and insured by the Federal Deposit Insurance Corporation (FDIC).

5. As a financial institution insured by the FDIC, Bank of Mingo was subject to the requirements of the Bank Secrecy Act (BSA), 31 U.S.C. § 5311 *et seq.*, and its implementing regulations.

6. Under the BSA, Bank of Mingo was required to develop, implement and maintain an effective anti-money laundering compliance program that, at a minimum, provided for internal controls and employee training to guard against money laundering, and monitored compliance with BSA requirements.

7. As part of the obligations imposed by the BSA, Bank of Mingo was required to file a Currency Transaction Report (CTR) for every currency transaction of more than $10,000.

8. As part of the obligations imposed by the BSA, Bank of Mingo was required to file a Suspicious Activity Report (SAR) whenever a known or suspected violation of federal law was detected.

### Violation of the BSA

9. From in or around January 2009 and continuing through in or around April 2012, Bank of Mingo willfully violated the BSA by failing to develop, implement and maintain an effective anti-money laundering program. Specifically, Bank of Mingo knowingly and willfully

failed to implement and maintain effective policies, procedures and internal controls that would have resulted in Bank of Mingo (1) obtaining sufficient "know-your-customer" information; (2) preventing its customers from structuring cash transactions to avoid the CTR requirements; and (3) filing SARS about suspicious activity.

10. As a result of Bank of Mingo's willful violation of the BSA, Bank of Mingo failed to detect and report unusual and large currency transactions by employees and agents of Aracoma Contracting, LLC (Aracoma Contracting), a West Virginia company that was in the business of providing contract labor to coal mining companies and coal-mining related operations in southern West Virginia. Aracoma Contracting routinely paid certain employees in cash and withheld no monies from their wages, to avoid paying employment taxes.

11. To generate sufficient cash to make the cash payroll in a manner that would avoid the generation of CTRs by Bank of Mingo, Aracoma Contracting arranged for cash to be withdrawn from Bank of Mingo's Williamson branch in amounts less than $10,000 with multiple cash withdrawals occurring on the same day. The withdrawals were accomplished in the following manner:

a. Aracoma Contracting assigned certain employees to obtain cash from Bank of Mingo's Williamson branch on particular days by cashing a cashier's check in an amount less than $10,000. Aracoma Contracting provided the name of the designated employee to the Williamson branch manager or his assistant. The cashier's check was issued in the name of that designated Aracoma Contracting employee. That employee endorsed the cashier's check at the Williamson branch in return for cash. Each cashier's check was funded by a line of credit established by Bank of Mingo for Aracoma Contracting.

b. The cash thus obtained was used to pay the wages of certain employees of Aracoma Contracting, who typically were "off-the-books." In their work for Aracoma Contracting, the "off-the-books" employees generated income for Aracoma Contracting that was subsequently used, in part, to pay down the outstanding balance of the line of credit that had originally funded the cashier's checks described in paragraph 'a' above.

c. The pattern of withdrawals in amounts less than $10,000, which extended from at least January 2009 through in or around April 2012, should have triggered the preparation and filing of CTRs and SARs by Bank of Mingo.

d. Aracoma Contracting engaged in this illegal pattern of structuring currency transactions, as described herein, and in violation of 31 U.S.C. § 5324, in part to conceal and promote then-ongoing criminal activity.

12. From January of 2009 through approximately April of 2012, Bank of Mingo, being fully aware of its obligations under the BSA, failed to file CTRs, and SARs related to currency transactions by Aracoma Contracting and its agents. The total of the cash withdrawals that were unlawfully structured to avoid the CTR requirements was at least $2,200,000.

## CLAIM FOR RELIEF

13. By virtue of the acts by Bank of Mingo as described above, the defendant currency is forfeitable to the United States as property traceable to property involved in one or more violations of 31 U.S.C. § 5324 or a conspiracy to commit such violations, and therefore is subject to forfeiture to the United States pursuant to 31 U.S.C. § 5317(c)(2).

WHEREFORE, the United States respectfully requests that process of warrant *in rem* issue for the arrest of the defendant currency; judgment be entered declaring the defendant

property forfeited to the United States for disposition according to law; and the United States be granted such other relief as this Court deems proper.

                                  Respectfully submitted,

                                  R. Booth Goodwin, II
                                United States Attorney

                                /Philip H. Wright
                                PHILIP H. WRIGHT
                                Assistant U.S. Attorney
                                Counsel for the United States
                                P.O. Box 1713
                                Charleston, WV 25326
                                Phone: 304-345-2200
                                Fax: 304-347-5443
                                E-mail: Philip.wright@usdoj.gov

## VERIFICATION

STATE OF WEST VIRGINIA

COUNTY OF KANAWHA, TO-WIT:

I, James Lafferty II, Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury as provided by 28 U.S.C. §1746, the following:

That the foregoing Complaint for Forfeiture *in rem* is based upon information I have gathered and which has been provided to me by various law enforcement personnel, and that everything contained therein is true and correct to the best of my knowledge and belief.

Executed on June 10, 2015.

JAMES LAFFERTY II

Taken, subscribed and sworn to before me this 10th day of June, 2015.

Notary Public

My commission expires on December 10, 2017.

